Mr. Martinez raises three challenges to his convictions following a jury trial in this case. The first is that the District Court erred when it failed to dismiss the felon in possession charge for which he is convicted because the trial did not comply with the Speedy Trial Act as to that charge. The second is an abuse of discretion argument related to the enterprise evidence that was presented to the District Court. And the final argument, Your Honors, is that the District Court erred in ordering a new trial because it failed to recuse itself under Section 455A after it was made aware of threats against it through a conspiracy that included Mr. Martinez. To start with the Speedy Trial arguments, this case was first initiated through a single count indictment for Mr. Martinez being a felon in possession of a firearm, which was entered on August 23rd. At that time, the Speedy Trial clock would have expired on December 26th. The parties appeared in court on December 11th ready to proceed to trial, but at which point they were made aware that a first proceeding indictment was filed that added a RICO conspiracy count. As part of those proceedings, Mr. Martinez filed a motion to sever the felon in possession count and proceed to trial in order to comply with the Speedy Trial clock. In doing so, the Speedy Trial deadline was extended for a single day, as the District Court only took and was able to deny that motion the next day from the bench, making the Speedy Trial clock run on December 27th. Mr. Hart, could I just cut in on that issue for a moment? As I read your opening brief, the focus of that argument is a clear error argument related to the District Court's determination that you consented to the continuance. Is that right? That is correct. Okay. Well, then help me with what seemed to be a disjunction between your opening brief and your reply brief. Your reply brief seemed to focus on essentially legal error, claiming that irrespective of the determination about your consent, that it would have been legally erroneous for the court to grant an ends of justice continuance anyway. In other words, there were not variables in play that will allow for that ends of justice continuance. Am I missing something? It seems to me those are two different arguments that are being made in two different briefs. So there are two portions of that section of the reply brief, Your Honor. First is reasserting the clear error arguments about the factual findings related to consenting to a continuance, but there are also responses in there to the government's brief related to Judge Browning's finding of an ends of justice continuance. We're not asserting that – we have not raised on appeal that the legal error in this case was that there was not grounds for an ends of justice continuance. What we're asserting is that the factual finding that the District Court made that we had consented to the continuance was incorrect. It was error because there was – the evidence actually showed that the purpose of the continuance was delay. Okay, well, all right. Well, I understood that, but I certainly saw at least what I had perceived to be a different theory at play in your reply brief. So your position is the arguments in your reply brief are, as they should be, simply further response to the clear error argument and that you are not because if I read it and you're saying it's not – I shouldn't be seeing a legal theory argument there. Then any such argument is abandoned, right, or waived. Oh, that's correct, Your Honor. We're not trying to raise a new legal argument in the reply brief. Okay, all right. Well, thank you for that clarification. Please proceed. Of course. So the factual error that we're specifically alleging is that the District Court took Mr. Martinez's agreement to the remedy of his denial – of his granting to the motion to continue as a – as consent to the continuance. In other words, the District Court had made perfectly clear at this point in time to Mr. Martinez over Mr. Martinez's objection that the case was going to proceed to a joint trial and that he was inclined to grant the government's motion to continue the trial so that they could share discovery as related to the new counts. Well, didn't Mr. Martinez's counsel – I don't know if it was you. Hello, it wasn't. It was my law. Didn't he just specifically agree that he – if the severance was denied, and it was apparently orally denied, although it's not real clear from the transcript that it was orally denied, but if the severance was denied, that he would need at least 30 days for a continuance. And that was what happened, essentially. So in that same sentence, Your Honor, the counsel below also stated that he wanted to make abundantly clear that Mr. Martinez was not consenting to any continuance or agreeing to any continuance. And what counsel was stating and what Mr. Martinez made clear – Can you read that for me, what you're referring to? You're saying that counsel made it abundantly clear that he wasn't agreeing to a continuance? Yes, Your Honor. Okay. So – and this is on page 5 of the blue brief where Mr. Harrison states, Your Honor, I just wanted to make it clear so that we're not waiving anything on our severance issue. I'm not trying to be difficult. We don't think we need any additional time on the felon in possession. We don't consent to a continuance of the felon in possession trial. However, if we're forced to have a joint trial, yes, Your Honor, we think 30 days is appropriate. Right, and forced to have a joint trial means he denies the motion to sever, which he did. And also, in our view in that moment, Your Honor, means that he's granting the government's request to continue and the question is how long should the continuance be? Not whether or not there will be a continuance, but how long. And the agreement from Mr. Martinez was that being that the case was going to be continued, that 30 days would have been a sufficient time. In other words, it's an agreement as to the remedy for granting the motion, not an agreement towards the continuance. Well, the need for a continuance is separate from the question of how long that continuance would be, right? That's correct. And, you know, the record is far from crystalline in clarity in terms of there's a lot of going backward and forward, and there are places where, admittedly, trial counsel says, wait a minute, Your Honor, I'm not conceding anything. This needs to be on the record. But nevertheless, why isn't it a plausible reading of the record taken as a whole, all of these statements, that the district court is not saying that you in an unvarnished fashion conceded to the continuance, but it is saying exactly what we're talking about here, that essentially the condition preceded was the denial of the motion for a severance. And when that was denied, you accepted the premise that there had to be a continuance. I mean, as I read the record, all of those statements together, that's what the district court is saying. Maybe not as artfully as it could have, and maybe in shorthand fashion, but that's what it was saying. If that is, if that is a plausible reading of the record, and that's the operative word, if that is a plausible reading of the record, you lose on this argument, right? I agree, Your Honor, that if the court reads the record that way, that, yes, we would lose on that argument. But I think that the record is replete with information of Mr. Martinez standing up, and even Mr. Martinez himself being questioned by the district court, and making clear that any continuance would be over his objection, and that he wished to proceed to trial on the felon in possession charge. So because the continuance was only based on two factual findings, one was to disclose discovery, two was because of consent, we assert that both those factual findings were in error because the record establishes that the purpose was for delay, and because the record establishes that Mr. Martinez never consented to a continuance as to that felon in possession charge. Okay. Does the factual finding as it relates to discovery, is that the subject of your opening brief too? I thought it was focused entirely on this whole question of whether Mr. Martinez agreed to the continuance. So the opening brief does mention, Your Honor, that amongst the reasons that the district court gave for the continuance was that discovery had to be produced, and that there was an agreement as to the continuance. Our position is that both are factual errors, although one, of course, is sufficient in our view, if there is one factual error that is sufficient to reverse. Your Honors, if I may move on to the 403 issue because I do think it's a complicated record. Prior to the trial in this case, Mr. Martinez did file a motion in limine, requesting that evidence of other murders by the S&M, by the prison gang at issue in this case, and other violent acts and a conspiracy to murder corrections officials be excluded as unduly prejudicial because that had absolutely no connection to Mr. Martinez. The result of that motion was a compromise decision by the court where he would, where the district court allowed some evidence of those prior acts, but in the way that he put it, the way the district court put it, allow only evidence related to little murders to try to give some color. Mr. Martinez continued to object throughout the trial related to this 403 evidence, and in fact, as discussed with the district court, Mr. Martinez did, in his opening statement, explicitly concede that the S&M was a racketeering enterprise, that it implicated interstate commerce, and that it engaged in the racketeering acts of murder, witness intimidation, and drug trafficking. But the government is still entitled to put on its case despite that concession, isn't it? The government is, of course, entitled to put on their case, but the question is, is that evidence at that point more probative than it is prejudicial? And our argument here today, Your Honor, is that once Mr. Martinez stood up, which is unique across these S&M cases, and actually conceded that those elements of the offense were met, then the probative value of those murders and of those other violent acts and of the conspiracy was greatly reduced and reduced to the point where the prejudice outweighed the probative value because it wasn't adding anything other than what was already conceded to. What about the Vicar counts and the need to show that you have entry and more to the point elevation or rising up in the ranks in the organization? Well, those murders gave a sense of the modus operandi of the organization, did they not? So they – I mean despite the district court's statement about color, I mean they did more than that. I mean they gave you a sense of – I mean certainly did for me when I read the record, gave me a sense of the nature of the organization and why the murder that was at issue or the violent conduct that would have been at issue would be entirely congruent, would be the argument with the nature of the organization. So this was also – that was also conceded in that opening statement, Your Honor, where Mr. Martinez agreed and stated to the jury that part of the acts of the organization, not just the individual murders but the acts of the organization, is to, as part of their activities, intimidate and even kill cooperators. No, well, I'm sorry. I didn't mean to cut you off, but that's not the same thing. I mean it's one thing to say that you have an enterprise that's engaged in killing people. That's part of what they do. It's very different, it seems to me, or at least it struck me as being different, and you can tell me why I'm wrong. It's very different to say that it is absolutely essential to enter, maintain status, and to elevate your status in this organization that you kill. I mean those are two different things. I mean you could say that the organization kills. It's another thing to say, at least there was through the record as I read it, various lines to the effect that if I didn't do the killing when I was told to do the killing, well, essentially I became the killed, the hunted, if I was not the hunter. Well, that's different, isn't it? I agree that that's different, Your Honor, but the challenge is not to the statements that they had committed certain crimes in order to further their position within the entity. And I do want to be quick because I want to try to reserve some time for rebuttal. But the contention is that the actual information that was there, for example, in the Javier Molina murder of him being strangled, being stabbed 42 times, that none of this information was necessary or probative of any of the issues that remained in the case. And if I may, Your Honor, I have about 45 seconds I could reserve. I'm sorry. No, I just want to see whether there are any other questions. I mean, we're going to be somewhat flexible today, so we'll give you some rebuttal. Don't worry about that. All right. Thank you, counsel. Good morning. My name is Richard Williams. I'm an assistant United States attorney with the U.S. Attorney's Office in the District of New Mexico, and I'm in Las Cruces and I represent the United States in this appeal. This court should affirm the district court's judgment and sentence in all respects. Turning first to the Speedy Trial Act, there was no clear error nor abuse of discretion in connection with the court's decision to deny the motion to dismiss. There was no violation under the Speedy Trial Act because the act was told when the district court entered an ends-of-justice continuance on December 13, 2019. That ends-of-justice continuance was amply supported by the record at that time, in particular that the government needed to disclose, pursuant to a protective order of significant discovery in connection with the RICO conspiracy count that had been added to the indictment. The superseding indictment did not toll the Speedy Trial Act with respect to the gun count, and we agree with that, but it also did not deliver an automatic severance to Mr. Martinez, which is essentially what he is arguing here. Rather, severance is to be analyzed separately, which the district court did, a decision which is not challenged before this court here today. I just have a question about that. I know it doesn't seem to be challenged, but I found it kind of interesting reading the transcript. Everyone seems to accept that Judge Browning did grant that continuance, but it looked to me like he specifically did not grant, not the continuance, but the severance at that hearing. He said, well, something to the effect of I'm likely to grant it, but he never did grant it, and yet both parties seemed to be accepting that he did, and it was like a year later in a written opinion that we have the granting, and in that opinion he said he orally denied the severance, I'm sorry, but he didn't actually, did he? Your Honor, what he said at the December hearing was that he was inclined to deny it. Is that a denial? Did the parties proceed as though that was a denial? That the parties did, and his subsequent description of it indicated that it was, and indeed. A year later you mean? Correct. Yeah. Correct. And indeed, Mr. Martinez doesn't challenge that aspect of it here because that would. I just wondered. That would toll the time based on the. Well, that's true. Of that motion, so his speedy trial act argument here would fail on that. So his motion would have been continuing that way. Correct. Okay. Turning to the clear error argument, there was no clear error. The district court comprehended entirely Mr. Martinez's position in that trial, and that position was that he opposed severance. He wanted to go to trial on the felony possession count, but if severance was denied, which it was, then he needed a continuance and that he needed at least 30 days before he would be ready and adequately prepared. So, based on that, the district court neither clearly aired nor abused its discretion in denying that motion to dismiss. If there are no further questions about that, I'll move to the next argument. Go ahead. Counsel, I'm sorry. Let me just follow up on that. What do you do with all the statements? Your Honor, I don't want a continuance. I don't want a continuance. By the way, I don't want a continuance. I mean, those statements were repeated by defense counsel, weren't they? What do you do with those? I think those statements were reiterating counsel's position that it did not, that Mr. Martinez didn't agree to the joint trial. It was in the context of severance. He was asking to sever the case. He wanted to go to trial on that count alone. The district court denied that, had ample grounds to deny it, and that's a decision that's not pressed before this court. I suggest that all those statements subsequent to that were merely reaffirming the fact that he didn't agree to the joint trial. It doesn't impact the speedy trial analysis that the court, once it had denied severance, must look at the case as a whole and determine whether or not to grant the ends of justice continuance. Otherwise, what it would result in is a superseding indictment, giving a defendant the opportunity to deliver a severance just based on the request, and that's a fundamental misunderstanding we submit of the structure of the Speedy Trial Act. With respect to the enterprise evidence, the district court did not abuse its broad discretion in admitting the limited evidence with respect to the S&M enterprise. First, the evidence was probative. It was probative to the structure and organization of the enterprise. It was probative to the rules of the enterprise, the rules of loyalty, the rules of respect, the rules of following orders in particular. Two witnesses, Mario Rodriguez and Roy Paul Martinez, testified to committing violent acts as a result of receiving orders. Mario Rodriguez testified that if you don't follow orders, then it's going to come back on you and put you at risk. We submit that there was ample probative evidence in the enterprise evidence and that the concession at opening did not eliminate the probative value of that evidence. The concession at opening did not cover all of those bases for which the jury needed the context in order to be able to adequately evaluate the S&M organization and its structure. Judge Browning here did something, as I'm recalling, he didn't just say, all right, the evidence can come in. He said, well, I'm not going to let it all in. But it wasn't really clear where he was going to draw the line. And do you think he really did draw the line? There was a lot of this evidence came in. Where did he cut back on it? Where did he say no? Well, there were several times when he told the government to move along and that we had had enough evidence about that. And I would also note that the evidence that did come in was very limited. It didn't provide many details at all about how the murders were committed, where they were committed, how many people were involved in committing them, autopsy reports, pathologists. It didn't involve any of those kind of things. You got murder after murder after murder in, though, right? You just didn't get all the details. Is that what you're saying? Correct. There were several general references to murders, both from the corrections department person explaining how they dealt with the S&M over the years and from the perspective of the FBI agent about the development of the investigation, and then from the two in particular cooperators from the S&M explaining the murders that they committed and why they did it and how it fit into the rules of the S&M. But I would repeat there that the evidence was extremely limited. It was sanitized to a great extent. And the district court, in fact, pointed out the difference in response to counsel's argument that his opening eliminated the probative value that there's a great difference between a generic description of a crime and a witness actually describing the crime and why it was done and how it was done. Putting a finer point on it, though, what are some of the salient issues that were still in dispute after, and I'm talking legal element type issues, still in dispute after the concession? Well, as your Honor mentioned, the intent element, the purpose of committing the Vicar offense for the purpose of maintaining or enhancing Mr. Martinez's position within the S&M, that was not conceded. The government had to prove that, and this evidence went directly to prove that element. Moreover, regardless, even if admitting this evidence was an error, which we submit it was not, any such error would have been harmless. The enterprise evidence did not play a central role in the case. There was abundant evidence against Mr. Martinez at the trial. Three of the cooperators testified regarding the Romero murder, described where it was, when it was, how it was committed, Mr. Martinez's role, that Mr. Martinez was the shot caller at the murder. The court gave proper instructions, and the jury was advised that the evidence was not to be considered character evidence with respect to Mr. Martinez, but was only admitted for the limited purpose. Moreover, the jury was well acquainted with the fact that the S&M organization is violent to its core. These general references to other murders added very little to that. So in sum, we would submit that admitting the evidence was not an abuse of the broad discretion, but regardless, any error would have been harmless. Turning to the final issue of recusal, similarly, the district court did not abuse its discretion in denying motion for new trial. The test is objective. The first aspect of it is whether the district court, whether a reasonable person would have thought that the district court knew or should have known of Mr. Martinez's role in the threat against the court. And there was no facts developed in court that would have led the district court to know that Mr. Martinez was involved in the threat specifically as to that judge. What was presented in court was that Mr. Martinez, on one occasion, had been involved in the threats with respect to the agent and the prosecutors, but not with respect to the judge. Well, the information was there, wasn't it? It was in an affidavit. I mean, there was information in the affidavit from the agent that he had threatened Judge Browning, but apparently no one was aware of that? That's correct. There's nothing in the record that suggests anyone was aware of that. Even though the affidavit was in the record? The affidavit was disclosed in the context of that hearing when Special Agent Acey was testifying. It was unsealed at that point. It was provided to defense counsel, and then it was provided also to the court. But defense counsel at that point didn't raise the specific point that Mr. Martinez was involved in the threats regarding the judge, didn't move to recuse, didn't draw that to the court's attention, and we would submit that a reasonable person wouldn't expect the judge to have stopped everything he was doing in the context of this trial to read carefully a 98-page affidavit to find the two isolated times when Mr. Martinez's name was listed in a series of names that were involved in discussing a threat that included the court. Okay, so to be clear, theoretically he could have at the time of the hearing, based upon the unsealing of the affidavit, he being Judge Browning, he could have reviewed the affidavit, but there is no basis in the record to believe that he actually did prior to sometime after trial because, I mean, my recollection of Judge Browning's comments before were that he was surprised by that and that he seemed to suggest that he had no reason to know that. That's correct, with one clarification. He did, in the subsequent post-trial order, note that he had taken a quick look at the affidavit and that his courtroom staff, I believe his deputy and his clerks, had reviewed it. And they didn't see anything. That was my recollection. They looked at it. He took a quick look. They looked at it, and at that time did not see anything. Correct. And there's nothing in the record to suggest that it was ever brought to his attention, that it was on his radar, that he ever was contemplating the fact that Mr. Martinez was involved in the threat with respect to the court. Yes. Let me follow up on this recusal issue for a second. In specifically the Greenspan case, at least I understood you to, at one point in your argument, be suggesting that even if Judge Browning had known about this, there would not have been a basis for him to recuse under 455A, 55A. And I'm a little puzzled by that because I thought in Greenspan, in fact, as it relates to 455A, we found that there should have been a recusal. And that's correct, and we would distinguish Greenspan. We would say the district court was correct that here the threat was less serious than the one in Greenspan, that the people involved in the threat were all in custody, as opposed to in Greenspan, the opinion reflects that there was a murder for hire that spanned, I believe, more than one state, aimed at the judge and his family. So here we would submit the threat was less serious. Moreover- That may be a suggestion of immediacy, but we've been talking about the modus operandi and how violence is bred into this organization, and that they not only work within prison, but outside of prison. So, I mean, that's pretty cold comfort, isn't it, to say that somehow or other there wasn't a direct threat? I mean, I don't know. I mean, but that is the line you're drawing, right, of distinguishment, that in some sense in Greenspan there was a direct, concrete threat against the judge, but here we would need to rely upon some inference related to the nature of the organization? In addition, there were no actions in court that were adverse to Mr. Martinez that reflected to an objective, reasonable observer, that the court was failing to be impartial. The court didn't do anything like the judge in Greenspan, who expedited the sentencing, refused to continue it, notwithstanding the fact that counsel was recently appointed. There were clear decisions that were made in Greenspan, and I'm about to run out of time. Yes, please finish. There were clear decisions in Greenspan that the judge was making because of the threat. But is that a 455A argument, or is that an argument? I thought in Greenspan they were also dealing with 144, Section 144, and there the question of prejudice arises. Under 455A, there is no prejudice issue, right? I mean, if there's an appearance of impropriety, you have to get out. We would submit that the appearance of impropriety is viewed objectively from the perspective of a reasonable observer who is looking at it in a rational way. And if there is nothing on the record reflecting that the judge is cognizant of the threat, that he's doing anything to take it seriously, or that he's taking any action that's adverse to Mr. Martinez, that that reasonable person would not question the impartiality of the judge. So you're saying that that evidence about essentially actions that could be deemed prejudicial also has some resonance in the context of 455A as it relates to the appearance of an objective observer? Yes, sir. Okay. Absolutely. Thank you. No, go ahead. One final point there. We would submit that even if there were error, it would be harmless. We would suggest the application of the Supreme Court factors in a little deburr and that none of them support finding an error here in the decision to deny the motion for new trial. Thank you, counsel. Two minutes, please. Thank you, Your Honor. Just to focus upon the recusal issue, which we didn't get to speak about before, the record is fairly clear that there was an abundance of information before Judge Browning related to this threat. In the form of an affidavit, which in his order he admits was highlighted and the information was put in front of him, he just says he didn't carefully read it in order to realize that the threat, the list of names. Counsel, can I just follow up on that? Do you concede, though, that it was not brought to his attention by defense counsel during, at any point? In that we didn't ask to recuse, yes. But it was brought to his attention in the mistrial. OK, but I'm sorry. So no, you didn't ask to recuse. You didn't say we need to draw your attention to this. Is it, I guess, two points in the affidavit in the 90 page affidavit? I'm sorry, Your Honor. I don't know. Where was the reference to the judge in the affidavit? So it was referenced, I believe, three times throughout the affidavit. OK. Right. So I believe it was referenced three times in the affidavit. It was also referenced in the argument regarding the mistrial motion. It was also referenced by Special Agent Acey, who was the case agent that was testifying when he discussed threats against the court. But in the argument for mistrial, if I recall correctly, you expressly disclaimed reliance on the affidavit. You said that you were relying upon the statements that were made by the agent in the courtroom when he was testifying, right? So the issue in the mistrial motion was that the representation that was made to us related to the affidavit did not include discussion about these threats. So when we then followed up on questions to, if I may just finish my answer. Yes, please. To Special Agent Acey, those questions were based upon a single 302 that we had previously been provided that said there were no threats. But the issue, Your Honor, is that a defendant under 455A shouldn't be required to ask for a recusal. And, in fact, there's a two-pronged test, both that there is actually some type of request but also the court's independent obligation. Yes, but what we're talking about is the contours of what that independent obligation should reasonably be. And if you've got a busy trial judge in the midst of what was a complicated trial and he didn't just throw it in the garbage can. I mean he had – he took a quick look at it and he had two people on his staff actually look at it and they didn't report anything back. The question is whether that was – well, in part the question is whether that was reasonable. I mean particularly when no one told him, it'd be one thing if somebody said, Your Honor, I think there may be something in there about you too. And then we'd be having a whole different conversation, wouldn't we? I did say that, Your Honor. So in the argument on the mistrial, we read from the affidavit which stated that there were threats against federal prosecutors, federal agents, and Judge Browning. So I was very shocked at the later motion hearing to hear that the court didn't catch that argument. Well, I don't recall you saying that. So where are you talking – where in fact are you talking about that that was said to Judge Browning before in connection with the recusal motion? Because I mean I recall the references to agents and to prosecutors, but I don't recall anyone bringing to his attention at the time that would have been relevant that there were actual threats against him connected to the defendant. So the transcript sections, Your Honor, are also referenced in the motion for new trial and are copied into there where this was raised. And it's also where Special Agent Acey did testify that there was a threat against the court and where Judge Browning even admits that someone – that a closer look shows that there was testimony and information before the court. And let's be clear. Court and Judge Browning are two different things. There was testimony about somebody from the S&M wanting to light up the court generically. That would not necessarily mean that they were going to go after Judge Browning. There was only one judge in all of the S&M cases, and no magistrate was involved. The only judge that was involved in all of the cases was Judge Browning. He presided over all the trials, all the hearings. I get that. But I mean court and personal threats are two different things. I mean you can do a lot of things to the court generally, building slash environment, that have nothing to do with I'm going to target you, judge. I mean so – and I get – I know this is on a continuum, but the point is simply the obligation that is being placed here is one of sua sponte acting, to recuse. And though you are entirely correct that the law doesn't require a motion to be made, the law would seem to require some reasonable basis for me as judge in a very complicated matter to decide I need to step away. And so, in other words, connecting the dots would seem to be a relevant determination that would have to be made, would it not? I think that it would, Your Honor. I think that that's correct. But what Judge Browning said in his opinion was that federal agents came to talk to him about the threat. He just didn't connect it to Mr. Martinez, that his – And is that a relevant connection that would need to be made for recusal purposes? The question, Your Honor, though, is whether when a federal agent – when the federal agents came to talk to him, when the affidavit was highlighted and put in front of him, when he read the newspaper article – No, no, no, no, no, no. We're going to focus on the question of when the federal agent came to him telling him there were threats against the court. And my question to you is it's one thing if S&M is after him. Let's assume that court equals Judge Browning. It's one thing if that's true. It's another thing to say that person who's sitting in my courtroom is trying to kill me. Would you concede those are two different things? I do concede that those are two different things. But I think we're starting to get into the subjective understanding of the threat. No, I'm trying to get into the sense of whether it would be reasonable for the judge to feel he had to do something if that defendant had not displayed any animus against him. Right. So the – in my view, Your Honor, based on what was put in front of him, yes, Judge Browning says that he did not realize. But that to me is his subjective understanding of what happened. And we're not talking about the subjective prong of the recusal analysis. We're talking purely about the objective prong, which is with all of the information that was available, would a reasonable person call into question the propriety of the trial? And with all of the information that was before the court, even though the court states that it did not realize that Mr. Martinez was part of the threat, it admits that there was a threat against it from Mr. Martinez. And our position is that that itself is sufficient with all of the evidence of how violent S&M is and that they carry through on their threats. As interesting as these arguments have been, we need to wrap it up. All good things come to an end. All right. Thank you. Thank you, counsel. Thank you, Your Honor.